FIFTH AVENUE COACH COMPANY, Appellant, *v.* THE CITY OF NEW YORK, Respondent.

Advertising on public vehicles in city of New York — ordinance forbidding same — jurisdiction of board of aldermen.

A city, which owns the fee of its streets, holds the same in trust for public purposes. It may grant rights therein other than for street purposes, which do not impair the public easement, or refrain from granting them, as public interest or convenience may require.

A legislative franchise permitting a corporation to run a line of stages in designated streets and avenues in the city of New York, for the transportation of passengers and parcels for hire, does not, in the absence of express provisions to that effect, authorize the corporation to carry or maintain exterior advertisements on its stages. Such advertising is in no way related to the transportation of passengers for hire and the right to carry and display the same is not a necessary or essential incident to the franchise rights of the company.

Under the charter of the city of New York (L. 1901, ch. 466, §§ 43, 44, and 50, as amd. L. 1905, ch. 629) the board of aldermen have the power to enact ordinances, not inconsistent with the Constitution and laws of the United States and of this state, which they may deem necessary for the good order and government of the city, and also have power to regulate the use of the streets for the exhibition of signs and advertisements, and to make such regulations in reference to the running of stages and

other vehicles as may be necessary for the convenient use and accommodation of the streets.

An ordinance prohibiting the display of advertisements upon wagons and other vehicles, except business notices upon ordinary business wagons engaged in the usual business or work of the owner and not used merely or mainly for advertising, is a proper and reasonable exercise of the authority to regulate the business conducted in the streets of the city, vested in the board of aldermen.

*Fifth Ave. Coach Co.* v. *City of New York,* 126 App. Div. 657, affirmed.

(Argued December 1, 1908; decided January 5, 1909.)

APPEAL from a judgment of the Appellate Division of the Supreme Court in the first judicial department, entered June 11, 1908, affirming a judgment in favor of defendant entered upon a dismissal of the complaint by the court on trial at Special Term.

The nature of the action and the facts, so far as material, are stated in the opinion.

*William H. Page, B. F. Einstein* and *G. H. Crawford,* for appellant. Appellant has rented to advertisers surplus exterior space upon its stages, as it has an inherent right to do as the owner of the stages, and no question of corporate franchise is involved. (*N. B. S. Co.* v. *Shea,* 182 Mass. 147; *State* v. *N. O. W. Co.,* 109 La. 64; *Benton* v. *Elizabeth,* 61 N. J. L. 411; *C. C., etc., Co.* v. *T., etc., Co.,* 106 Tenn. 651; *French* v. *Quincy,* 3 Allen, 9; *Spaulding* v. *Lowell,* 23 Pick. 71; *Worden* v. *New Bedford,* 131 Mass. 23; *People* v. *Platteville,* 71 Wis. 139; *Forrest* v. *M. Ry. Co.,* 30 Beav. 40; *Brown* v. *Winnisinnuet Co.,* 11 Allen, 326.) The Fifth Avenue Transportation Company possessed the express or necessarily implied corporate right to lease or sublet any part of its property, and this right passed to the appellant as the successor of that company. (*Matter of L. A. E. L. & P. Co.,* 188 N. Y. 361; *Koch* v. *N. A. R. Co.,* 15 L. R. A. 377; *Smith* v. *H. R. F. Soc.,* 118 App. Div. 678.) The usurption of franchises by the plaintiff (if there be any) is not available to the city as a defense in this action, the proper remedy therefor being a proceeding by the state direct. (*Paige* v.

*S. Ry. Co.,* 178 N. Y. 102 ; *Matter of N. Y. El. R. Co.,* 70 N. Y. 327 ; *C. I., etc., Co.* v. *Kennedy,* 15 App. Div. 588 ; *B. C. R. Co.* v. *Fury,* 4 Abb. Pr. [N. S.] 364 ; *B. C. R. Co.* v. *City of Brooklyn,* 37 Hun, 413 ; *B. C. R. Co.* v. *B. C. R. Co.,* 32 Barb. 358 ; *Sickles* v. *M. G. L. Co.,* 64 How. Pr. 33.) Appellant has a common-law right to use the streets in which it has a franchise to run omnibuses, for the purpose of exhibiting advertisements, subject to the lawful exercise of police power by the city. (*People* v. *Dept. of Health,* 117 App. Div. 856 ; *Graves* v. *Shattuck,* 35 N. H. 257 ; *Hinman* v. *Clarke,* 105 N. Y. Supp. 725 ; *People* v. *City of Rochester,* 44 Hun, 166 ; *Stamford* v. *Fisher,* 140 N. Y. 187.) The city ordinance prohibiting advertising trucks, vans or wagons in the streets, does not apply to the appellant's vehicles. (Endlich's Interp. of Stat. 254, 255, § 184 ; *Vil. of Stamford* v. *Fisher,* 140 N. Y. 187 ; *Burks* v. *Bosso,* 180 N. Y. 341 ; *Snyder* v. *North Lawrence,* 8 Kan. 82.) Even if there were an ordinance of the city, which in express terms prohibited the display of advertisements on the outside of appellant's vehicles, such ordinance would exceed the legislative powers of the city. (*Peace* v. *McAdoo,* 110 App. Div. 13 ; *T. I. P. Assn.* v. *Tucker,* 173 N. Y. 203 ; *Passaic* v. *P., etc., Co.,* 71 N. J. L. 75 ; *McConvill* v. *Mayor, etc.,* 39 N. J. L. 38 ; *Matter of Hauck,* 70 Mich. 396 ; *Miller* v. *Jones,* 80 Ala. 89 ; *Schuster* v. *Met. Bd. of Health,* 49 Barb. 450 ; *People* v. *Armstrong,* 73 Mich. 288.)

*Francis K. Pendleton, Corporation Counsel (Theodore Connoly, Terence Farley* and *Louis H. Hahlo* of counsel), for respondent. A common carrier has no common-law right to use the public highways for advertising, not its own, but that of some one else. Such purposes are entirely foreign to the objects of its incorporation. (*Matter of Armstrong* v. *Murphy,* 65 App. Div. 123 ; 15 Am. & Eng. Ency. of Law [2d ed.], 290 ; 19 Am. & Eng. Ency. of Law [2d ed.], 1139 ; *People ex rel. Larrabee* v. *Mulholland,* 82 N. Y. 324 ; *Village of Stamford* v. *Fisher,* 140 N. Y. 187 ; *T. I. P. Assn.*

v. *Tucker,* 173 N. Y. 210; *People ex rel. Schwab* v. *Grant,* 126 N. Y. 481; *Palmer* v. *L. E. Co.,* 158 N. Y. 231; *Osborne* v. *A. T. Co.,* 189 N. Y. 393.) The highway may only be used for municipal or street purposes. The display of advertisements upon plaintiff's stages is neither a municipal nor a street purpose. (*Hatfield* v. *Straus,* 189 N. Y. 208; *Ackerman* v. *True,* 175 N. Y. 353; *State ex rel. Belt* v. *St. Louis,* 161 Mo. 371.) Grants of franchises to public corporations are to be strictly construed. Nothing passes by intendment, and the only powers vested in them are those which are either expressly conferred or are necessarily implied for the purpose of enabling them to transact their public duties. (*C. M. Co.* v. *South Carolina,* 144 U. S. 550; *Water Co.* v. *Knoxville,* 200 U. S. 22; *Blair* v. *Chicago,* 201 U. S. 400; *A. & C. P. R. Co.* v. *Douglas,* 9 N. Y. 444; *R. & S. Ry. Co.* v. *Davis,* 43 N. Y. 137; *Matter of N. Y. & H. R. R. Co.,* 46 N. Y. 546; *Mohawk Bridge Co.* v. *Utica, etc., Co.,* 6 Paige, 554; *Thomas* v. *R. R. Co.,* 101 U. S. 71; *C. R. R. Co.* v. *Collins,* 40 Ga. 582.) The business of advertising tobacco, cigarettes, soap and toilet articles is not incidental to the exercise of a franchise to operate stage coaches for hire. (*M. E. Church* v. *Dixon,* 178 Ill. 260; *Hood* v. *N. Y. & N. H. R. Co.,* 22 Conn. 16; *People* v. *C. G. T. Co.,* 130 Ill. 268; *Burke* v. *Mead,* 159 Ind. 252; *State ex rel. Jackson* v. *Newman,* 51 La. Ann. 833; *Franklin Co.* v. *L. Sav. Bank,* 68 Me. 43; *Nicollet Bank* v. *Frisk-Turner Co.,* 71 Minn. 413; *Curtis* v. *Leavitt,* 15 N.Y. 9.) The attempted exercise of powers which are not incidental to those which are either expressly granted or necessarily implied, is *ultra vires.* (*Pearce* v. *Met. R. R. Co.,* 21 How. [U. S.] 441; *Wiswall* v. *G. & P. R. Co.,* 3 Jones Eq. [N. C.] 183; *Downing* v. *M. W. R. Co.,* 40 N. H. 230; *P. Co.* v. *Dandridge,* 8 G. & J. 248; *Abbott* v. *B. S. P. Co.,* 1 Md. Ch. 442; *N. O., F. & H. S. Co.* v. *O. D. D. Co.,* 28 La. Ann. 173.) The advertisements in question constitute a violation of the city ordinances. (*D. D., E. B. & B. R. R. Co.* v. *Mayor, etc.,* 47 Hun, 221; *Luce* v. *Hassam,* 58 N. Y.

76.)   The ordinance in question is a valid exercise of the legislative power of the city.   (*Ringelstein* v. *City of Chicago*, 128 Ill. App. 483; *Wettengel* v. *City of Denver*, 20 Col. 552; *Comrs.* v. *McCafferty*, 145 Mass. 384; *Comrs.* v. *Plaisted*, 148 Mass. 375; *Comrs.* v. *Ellis*, 158 Mass. 555; *City of Rochester* v. *West*, 164 N. Y. 510; *Gunning* v. *City of Buffalo*, 75 App. Div. 31; *City of Chicago* v. *Gunning*, 214 Ill. 628.)   Having no power or right to exhibit the displays in question, plaintiff cannot come into a court of equity and seek to enjoin the defendant from interfering with it.   (*Weiss* v. *Herlihy*, 23 App. Div. 608.)

CHASE, J.   The plaintiff owns and runs on the route hereinafter described, in the city of New York, a large number of stages.   On the 11th day of May, 1907, it entered into an agreement with the Railway Advertising Company by which it granted and leased to said company "The exclusive right and privilege of maintaining advertising signs upon the exterior of each and every coach or omnibus now (then) operated or run, or which may hereafter (thereafter) be operated or run, upon the regular route of said coach company, extending from Eighty-ninth street in the city of New York down Fifth avenue across and to the south side of Washington Park and return and upon any additional route or extension of its route which shall be operated by it" during the term of said lease.

The agreement is to continue until December 31, 1913.   It provides that "If at any time any order or judgment of a court having jurisdiction in the premises shall be entered, or any act of the legislature of the state of New York shall be passed, or any ordinance or resolution of the city of New York or of any branch of the city government shall be adopted which forbids the use of the exterior of said vehicles for advertising purposes or which imposes any tax or license fee upon said vehicles by reason of such exterior advertising in addition to the tax or license fee now paid for the same, which additional tax or license fee the advertising company shall

refuse to pay, the coach company shall, in any such event, have the right to terminate this agreement upon thirty days written notice to the advertising company."

Since the making of said agreement the plaintiff has operated its said stages for the transportation of passengers at a uniform fare of ten cents for each person, and it has maintained on the exterior of said stages advertisements provided by said advertising company. The advertisements consist of painted scenes and letters which are extravagant and gaudy in appearance. They are fully described in the record, and a detailed statement of some of such advertisements may also be found in the opinion of the court at Special Term, rendered on the trial of this action which is reported in 58 Misc. Rep. 401. It was found by the trial court as follows : " The defendant through its various officials and officers has interfered with and threatens to continue to so interfere with and to prevent the use of signs on the exterior space upon the stages operated by the plaintiff herein for the display of advertising matter and to cause the removal of said advertising matter."

This action is brought by the plaintiff to permanently enjoin and restrain the defendant from interfering in any way with the advertising signs or matter permitted, placed or used by the plaintiff, or under its direction, on the exterior of said stages.

The plaintiff was incorporated on the 23rd day of July, 1896, " To take and possess the property and franchises of a domestic stock corporation (Fifth Avenue Transportation Company, Limited) sold as hereinafter (in the certificate of incorporation) stated."

The property thus sold and subsequently transferred to the plaintiff, so far as it relates to a franchise, is as follows : " The right to run and drive, or cause to be run and driven, a line of stages or carriages *for the transportation of passengers for hire* from Eighty-ninth street in the city of New York down Fifth Avenue across Washington Park and along South Fifth Avenue to the Bleecker street elevated station and return.

Together with all the rights granted to Fifth Avenue Transportation Company limited or acquired under or by chapter 536 of the laws of 1886 and all the rights granted to or acquired by said Fifth Avenue Transportation Company limited under or by chapter 182 of the laws of 1889."

The Fifth Avenue Transportation Company, Limited, was organized October 28, 1885. It went into the hands of a receiver in 1895 and the plaintiff corporation was organized for the purposes stated and to it was transferred on November 3, 1897, the property and franchises for the holding, maintenance and operation of which it was organized.

Chapter 536 of the Laws of 1886 authorized the Fifth Avenue Transportation Company, Limited, and its assigns, " On payment of the license fees as hereinafter (in said statute) provided, to run and drive, or cause to be run and driven, and without further authority from said city, a line of stages, or carriages, for the transportation of passengers for hire, from Eighty-ninth street in the city of New York down Fifth Avenue, across Washington Park, and along South Fifth Avenue to the Bleecker street elevated station and return." Other provisions were included in the act relating to the consent of property owners on the avenues and streets whereon the stages were to be run, the payment of a license fee and the rate of fare.

Chapter 182 of the Laws of 1889 authorizes said Fifth Avenue Transportation Company, Limited, with the consent of the commissioners of the sinking fund and on such terms as they may prescribe, " To run, drive, or cause to be run and driven, and without further authority from said city, a line of stages or carriages for the transportation of passengers and parcels for hire " upon the streets therein named including the streets mentioned in the act of 1886.

Chapter 657 of the Laws of 1900 authorizes a corporation operating a lawfully established stage route as therein provided and upon the authority and consent therein provided to extend its route and to operate the route so extended with stages and omnibuses propelled by electricity or any other

motive power.   The plaintiff has since materially extended its route and it is now operating its stages by motor power pursuant to the franchises obtained as stated and defined in said acts of the legislature.   The stages were drawn by horses prior to 1907.   Such franchise does not expressly include the right to use the public streets mentioned therein for advertising purposes or to carry or maintain exterior advertisements on its stages and the carrying of such advertisements is not a necessary or essential incident to its express franchise rights. Such exterior advertising is in no way related to the carrying of passengers for hire.

The defendant has provided by ordinance as follows :  " No advertising trucks, vans or wagons shall be allowed in the streets of the Borough of Manhattan under a penalty of $10 for each offense.   Nothing herein contained shall prevent the putting of business notices upon ordinary business wagons, so long as such wagons are engaged in the usual business or work of the owner and not used merely or mainly for advertising."

A wagon is defined to be a wheeled carriage ; a vehicle on four wheels.   The defendant's charter provides that the word vehicle " shall be deemed to include wagons, trucks, carts, cabs, carriages, stages, omnibuses, motors, automobiles, locomobiles, locomotives, bicycles, tricycles, sleighs or other conveyances for persons or property."   The plaintiff's stages are also called indiscriminately carriages, coaches and omnibuses. They are vehicles on four wheels designed primarily for the carriage of passengers, and they are wagons within the meaning of the ordinance.   The fact that they are now propelled by motors instead of being drawn by horses has not changed their character as wagons or removed them from the prohibition of the ordinance.

The second sentence of the ordinance is a part of the same paragraph and the two  sentences read together show the intention of the legislative body.   It bears evidence in itself that it was not intended to refer exclusively to wagons wholly used for the display of advertisements.   Business notices upon ordinary business wagons are not prohibited so long as

such wagons are engaged in the usual business or regular work of the owner, but even such notices are prohibited on wagons used merely or mainly for advertising. General advertising for hire is by the ordinance prohibited whether carried on wagons wholly used for advertising or in connection with the ordinary or usual business in which the wagons are engaged. The second sentence of the ordinance was wholly unnecessary unless the negative in the first sentence was intended to prohibit general advertising on wagons even if they are not wholly devoted to that use.

Power to make ordinances is given by the defendant's charter to the board of aldermen. It is therein provided as follows: "The board of aldermen shall have power to make * * * all ordinances * * * not contrary to the laws of the state, or the United States, as they may deem necessary to carry into effect the powers conferred upon the city of New York by this act, or by any other law of the state, or by grant; and such as they may deem necessary and proper for the good government, order and protection of persons and property, and for the preservation of the public health, peace and prosperity of said city, and its inhabitants. * * *." (Section 43 of said charter, as amended by chapter 629, Laws of 1905.)

"* * * The board of aldermen in addition to all enumerated powers may exercise all of the powers vested in the city of New York by this act, or otherwise, by proper ordinances * * * not inconsistent with the provisions of this act, or with the constitution or laws of the United States or of this state * * * may from time to time ordain and pass all such ordinances * * * applicable throughout the whole of said city or applicable only to specified portions thereof, as to the said board of aldermen may seem meet for the good rule and government of the city, and to carry out the purposes and provisions of this act or of other laws relating to the said city * * *." (Section 44 of the charter as so amended.)

"Subject to the constitution and laws of the state, the board

of aldermen shall have power to regulate the use of streets and sidewalks by foot passengers, animals or vehicles; \* \* \* to regulate the use of the streets for signs \* \* \* and other purposes; to regulate the exhibition of advertise-·ments \* \* \* and to make all such regulations in reference to the running of stages, omnibuses, trucks and cars as may be necessary for the convenient use and the accommodation of the streets \* \* \*." (Section 50 of charter as so amended.)

That the defendant owns in fee the streets and avenues over which the plaintiff runs its stages is not disputed. Such streets are held in trust for public uses. In *Osborne* v. *Auburn Telephone Company* (189 N. Y. 393, 397) this court say : " Cities which own the fee in the streets may contract, lease or grant their use for public or municipal purposes not inconsistent with nor prejudicial to the public easement or use for street purposes. In such cases the fee having been transferred to the municipality, it can grant rights in the streets other than for street purposes which do not impair the public easement." The converse of such statement is true, and a city which owns the fee of its streets can refrain from granting rights therein that are not for street purposes.

This case is not one like *N. Y. Mail & Newspaper Transportation Co.* v. *Shea* (30 App. Div. 266) to prevent the consummation of a contract made in behalf of a city, nor of *Interborough Rapid Transit Co.* v. *City of New York* (47 Misc. Rep. 221) and other similar cases construing a lease made by the city. In this case the plaintiff without express authority to maintain advertisements on the exterior of its stages seeks to enjoin the defendant from interfering with such advertisements notwithstanding its express prohibitive ordinance.

It was stated in *N. Y. Mail & Newspaper Transportation Co.* v. *Shea* (*supra*) by Judge CULLEN, then sitting in the Appellate Division, that a contract made by the late trustees of the New York and Brooklyn Bridge with a corporation by which they authorized it to lay and operate a pneumatic tube on said bridge, could be wholly abrogated by said trustees and that

the corporation would have to submit. Said bridge and its approaches are owned in fee, and the judge there said, refering to the contract, that it and all similar contracts " must be construed as made subject to what we may term the governmental or legislative power of the bridge authorities over its public use." (P. 270)

Conducting a private business and using private easements in public streets, even where expressly authorized by the municipality, are frequently condemned. (*Hatfield* v. *Straus*, 189 N. Y. 208; *State ex rel. Belt* v. *St. Louis*, 161 Mo. 371 ; *People ex rel. Healy* v. *Clean Street Company*, 225 Ill. 470.)

In further considering the authority of defendant to enact said ordinance the language of the charter may be repeated in so far as it says that the board of aldermen may make such ordinances " as they may deem necessary and proper for the good government   *   *   *   of said city and its inhabitants," and also, " as to the said board of aldermen may seem meet for the good will and government of the city."

The board of aldermen are thus the judges as to what ordinances they will pass to carry out and preserve the interests of the municipality and unless an ordinance passed by them is wholly arbitrary and unreasonable it should be upheld. The necessity and advisability of the ordinance is for the legislative power to determine. The presumption is in favor of the ordinance.

The validity of a statute is not alone to be determined by what has been done in any particular instance, but by what may be done under it. (*City of Rochester* v. *West*, 164 N. Y. 510.)

The plaintiff is engaged in the transportation of passengers and at the same time in running advertising wagons. The exterior advertisements carried by it are not seen by its passengers, but they are such that they can be seen in the streets of the city and in Central Park when the view is not obstructed for a distance of one-half mile.

Fifth avenue is an important and much-used street. At

certain times of the day slow-moving trucks are barred there-from on account of the congestion in such street. The plaintiff's contract with the advertising company allows the advertisements on its stages to become the conspicuous part of their exterior, and the business of advertising for the purpose of revenue is of such value to the plaintiff that the gross income therefrom exceeds six per cent upon its entire capital stock.

The contract with the advertising company includes "each and every coach or omnibus now operated or run, or which may hereafter be operated or run" by it, and the compensation is dependent upon the number so operated and run. The number has continually increased. Such advertising for hire clearly tends to increase the number of plaintiff's stages in such important and much-used street, and constitutes a substantial reason, not only for the continuance of the present number of stages therein, but also for the further increase of the number thereof. Every procession, parade or show upon vehicles passing through a public street tends to congestion therein, and to some extent interferes with those engaged in business or having their homes thereon.

It appears that the right to display garish advertisements in conspicuous places has become a source of large revenue. If the plaintiff can cover the whole or a large part of the exterior of its stages with advertisements for hire, delivery wagons engaged by the owners in their usual business or regular work can rightfully be covered with similar advertisements. Cars and vehicles of many descriptions, although not engaged exclusively in advertising, and thus not incumbering the street exclusively for advertising purposes, may be used for a similar purpose. The extent and detail of such advertisements when left wholly within the control of those contracting therefor would make such stages, wagons or cars a parade or show for the display of advertisements which would clearly tend to produce congestion upon the streets upon which they were driven or propelled. The exaggerated and gaudy display of advertisements by the plaintiff is for the express purpose of attracting and

claiming the attention of the people upon the streets through which the stages are propelled.

In *Commonwealth* v. *McCafferty* (145 Mass. 384) the court, referring to an ordinance which provided " No person shall place or carry, or cause to be placed or carried, on any sidewalk, any showboard, placard, or sign for the purpose of there displaying the same," say : " The purpose of the ordinance in question is to prevent the placing of showboards and signs upon the sidewalks so as to obstruct them, and also to prevent the carrying of placards and signs for the purpose of displaying them, of which the tendency and effect might be to collect crowds, and thus to interfere with the use of the sidewalks by the public, and lead to disorder. We cannot say that such a provision applicable to the crowded streets of a populous city is unreasonable."

The board of aldermen were not wholly arbitrary and unreasonable in passing the ordinance that we have quoted. This action is brought by the plaintiff in equity to enjoin the city from interfering with the maintenance of such exterior advertisements on its stages. It has failed to show that the maintenance of such exterior advertisements is within its express franchise rights or that such ordinance prohibiting their maintenance on its stages is not a proper exercise of the authority vested in the city to regulate the business conducted in the streets thereof, and the trial court was, therefore, right in dismissing the plaintiff's complaint.

The judgment appealed from should be affirmed, with costs.

CULLEN, Ch. J., EDWARD T. BARTLETT, HAIGHT, VANN and WILLARD BARTLETT, JJ., concur; GRAY, J., concurs in result.

Judgment affirmed.