THE PEOPLE OF THE STATE OF NEW YORK, Respondent, *v.* DONALD HOPKINS and Others, Appellants.

Court of Special Sessions, City of New York, Appellate Part, Second Judicial Department, March 17, 1933.

*Benjamin C. Ribman*, for the appellant Hopkins.

*William F. X. Geoghan, District Attorney* [*Harry Walsh* of counsel], for the respondent.

PER CURIAM. The appellant has been convicted of violating section 30 of chapter 24 of the Ordinances of the City of New York. This ordinance reads as follows: " No advertising trucks, vans or wagons shall be allowed in the streets; provided that nothing herein contained shall prevent the putting of business notices upon ordinary business wagons, so long as such wagons are engaged in the usual business or regular work of the owner and not used merely or mainly for advertising."

This appeal is one of eight appeals from judgments of convictions. All of the appeals were argued together. The complaints in all the cases are similar and the evidence as well as the facts in each case are not in dispute except another appeal taken by the appellant Donald Hopkins which will be disposed of in a separate memorandum.

These convictions grow out of a dispute between the Motion Picture Operators Union, known as Local 306, in behalf of which this appellant was rendering services, and another organization which calls itself the Empire State Motion Picture Operators' Organization.

At the time the appellant was apprehended he was driving a truck through the streets of the borough of Brooklyn, city of New York. This truck was hired from a Mrs. Green, which bore these notices containing language reading as follows:

(a) On the side of the vehicle: " $500 reward for the arrest and conviction of the bomb throwers in the A. H. Schwartz Century Circuit Theatre Moving Picture Operators Local 306 — American Federation of Labor.

" Please do not patronize Patio Albermarle Farragut Rialto They employ a scab group."

(b) On the rear of the vehicle: " $500 reward for the arrest and conviction of the bomb throwers in the A. H. Schwartz Century Theatre Moving Picture Local 306 — Operators Union 306 American Federation of Labor.

" We stand for decency in unionism Local 306 is now picketing the Patio and Albermarle."

Besides the placards on the outside of the truck some merchandise was being transported, namely, posters which bore language constituting an appeal to the public for the support of Local 306. These were to be delivered to pickets at different points in the borough.

The appellant attacks the validity of the conviction from two

angles. First that the trucks in question were not advertising trucks and as they were being used in the regular work of the owner they came within the exception mentioned in the ordinance. Urging the first point he contends that the signs on the trucks were not advertisements and that, therefore, the trucks are not advertising trucks. In support of this contention he defines advertising as follows: " The process of disseminating information for commercial purposes," which he discloses is the definition sanctioned by the Encyclopaedia Britannica. This may be a definition of advertising but it is not by any means the only definition. Webster's Dictionary (1911) defines advertising as follows: " Advertise (derivation French Avertir) to warn, to give notice to. 1. To notice; observe. 2. To give notice to; to inform or apprise; to notify; to make known, hence, to warn:— often with " of " before subject * * * as, to advertise a man of his loss. 3. To give public notice of; to announce publicly, esp. by a printed notice; as, to advertise goods for sale, a lost article, the sailing day of a vessel, a political meeting."

The following definition appears in Funk & Wagnalls Dictionary (1928): " Advertise 1. To make known by a public notice, especially by print; publish abroad; commend to the public; as, to advertise an actor. 2. To inform or notify; give notice to; advise. 3. To consider; advert to; turn the mind to.

" To give public notice or information, as of something desired, an entertainment, a place of business, etc.; publish; as, to advertise for a servant; to advertise extensively."

We must conclude from this that the signs displayed upon the trucks were advertising signs and to that extent the trucks were advertising trucks.

It is, however, contended that the appellant, who was in the employ of the union, was engaged in presenting the claims of the union which he had a proper right to do, and in support of the contention the appellant cites the case of *Stillwell Theatre, Inc.*, v. *Kaplan* (259 N. Y. 405), which states as follows: " It has never been held by this court that a labor union is without justification in fairly setting forth its claims in a controversy over terms and conditions of employment by sign, hand-bill or newspaper advertisement as a legitimate means of economic coercion."

We do not feel that because the appellant was transporting placards that were to be used by the union for picketing brings him within the exception in the ordinance which says: " No advertising trucks, vans or wagons shall be allowed in the streets; provided that nothing herein contained shall prevent the putting of business notices upon ordinary business wagons, so long as such

wagons are engaged in the usual business or regular work of the owner and not used merely or mainly for advertising."

These were not business notices on ordinary business wagons nor was the distributing of placards the usual business or regular work of the owner and we feel that the use of the trucks was simply and mainly for advertising.

The case of *Fifth Ave. Coach Co.* v. *City of New York* (194 N. Y. 19) seems to dispose of this controversy. This case decided that the Fifth Avenue Coach Company had no right to display advertising matter on the outside of the buses when they were licensed to operate through the streets of the city. Judge CHASE says (at p. 30): " The extent and detail of such advertisements when left wholly within the control of those contracting therefor would make such stages, wagons or cars a parade or show for the display of advertisements which would clearly tend to produce congestion upon the streets upon which they were driven or propelled. The exaggerated and gaudy display of advertisements by the plaintiff is for the express purpose of attracting and claiming the attention of the people upon the streets through which the stages are propelled." In *Commonwealth* v. *McCafferty* (145 Mass. 384) the court, referring to an ordinance which provided: " No person shall place or carry, or cause to be placed or carried, on any sidewalk, any showboard, placard, or sign for the purpose of there displaying the same," say: " The purpose of the ordinance in question is to prevent the placing of showboards and signs upon the sidewalks so as to obstruct them, and also to prevent the carrying of placards and signs for the purpose of displaying them, of which the tendency and effect might be to collect crowds, and thus to interfere with the use of the sidewalks by the public, and lead to disorder. We cannot say that such a provision applicable to the crowded streets of a populous city is unreasonable."

We hold, therefore, that the placards displayed on the side and rear of the trucks in question clearly did not come within the exception mentioned in the ordinance.

Judgment affirmed.

Present, KERNOCHAN, P. J., FETHERSTON and SALOMON, JJ.