Joseph L. McQuade *vs.* New York Central Railroad Company.

Suffolk. April 2, 1946. — June 29, 1946.

Present: Field, C.J., Lummus, Qua, Ronan, & Spalding, JJ.

*Railroad,* Uniform cap. *Constitutional Law,* Equal protection of laws, Police power, Railroad. *Labor and Labor Union. Statute,* Validity. *Words,* "Provide."

Section 177 of G. L. (Ter. Ed.) c. 160 requires a railroad corporation operating in the Commonwealth to furnish without charge a uniform hat or cap to an employee whose duties relate immediately to the transportation of passengers or their baggage.

Section 177 of G. L. (Ter. Ed.) c. 160 is not violative of the Federal Constitution or of the Constitution of Massachusetts as arbitrary and unreasonable class legislation denying to a railroad corporation the equal protection of the laws.

The provisions of G. L. (Ter. Ed.) c. 160, § 177, are not invalid as encroaching upon a field covered by the Federal railway labor act.

The provision of G. L. (Ter. Ed.) c. 160, § 177, requiring a railroad corporation to provide a hat or cap "which shall be worn by all its employees whose duties relate immediately to the transportation of passengers or their baggage," meets the standard of definiteness required of a penal statute.

The question, whether the providing by a railroad corporation operating in the Commonwealth of a hat or cap to be worn by certain employees was in the public interest and should be required through an exercise of the police power, was for the Legislature to decide and was not reviewable by this court.

Bill in equity, filed in the Supreme Judicial Court for the county of Suffolk on October 29, 1945.

The facts being agreed, the case was reserved and reported by *Spalding,* J.

*T. C. O'Brien,* (*J. S. Stone* & *J. E. Keefe, Jr.,* with him,) for the plaintiff.

*G. H. Fernald,* (*W. L. Parsons* with him,) for the defendant.

Spalding, J. This is a bill in equity brought under

G. L. (Ter. Ed.) c. 160, § 252,[1] to compel the defendant to furnish the plaintiff with a uniform hat or cap without charge in accordance with G. L. (Ter. Ed.) c. 160, § 177. The case was heard on a statement of agreed facts by a single justice, who reserved and reported the case for the consideration of the full court.

The plaintiff is a railroad trainman employed by the defendant upon its passenger trains within the Commonwealth, and his "duties relate immediately to the transportation of passengers or their baggage." The defendant is the lessee of the Boston and Albany Railroad and as such is engaged in the transportation of passengers between Boston, Massachusetts, and Albany, New York. The plaintiff requested the defendant to furnish him with a uniform cap free of charge. The defendant refused to comply with this request but offered to furnish such a cap "at a reasonable cost to the plaintiff."

General Laws (Ter. Ed.) c. 160, § 177, provides that "Every railroad corporation shall *provide* a uniform hat or cap and distinguishing badge,[2] which shall be worn by all its employees whose duties relate immediately to the transportation of passengers or their baggage. A corporation neglecting to *provide* such uniform hat or cap and badge shall forfeit one hundred dollars for each week of such neglect; and if such an employee neglects to wear the same when on duty, the corporation which employs him shall for each case of such neglect forfeit twenty-five dollars; and no employee, unless wearing his uniform hat or cap and badge, shall be permitted to exercise any authority or to perform any of the duties of his office" (emphasis added). This section stems from St. 1874, c. 292, the material portions of which are as follows: "Every railroad corporation shall *prescribe* a uniform cap and distinguishing badges to

---

[1] This section provides that the "supreme judicial court shall have jurisdiction in equity on petition of the attorney general, of the railroad corporation, of any public body or of any other party interested to compel the observance of and to restrain the violation of all laws which govern railroad corporations."

[2] No question is involved here concerning the duty to supply badges, as it was agreed at the arguments before us that the defendant furnishes its employees with badges free of charge.

be worn by all its employés whose duties relate to the immediate transportation of passengers or their luggage. A corporation neglecting to *prescribe and furnish* such uniform cap and badges, shall forfeit one hundred dollars for each week of the continuance of such neglect; and if any employé for whom such uniform cap and badge is *prescribed*, neglects when on duty to wear the same, the corporation employing him shall for each case of such neglect, forfeit the sum of twenty-five dollars" (emphasis added). It is to be noted that in the first sentence the word "prescribe" is used whereas in the second sentence, which imposes a penalty for noncompliance, the words "prescribe and furnish" are used. In the same year that c. 292 was enacted, the laws relating to railroads were revised and consolidated in St. 1874, c. 372, in which c. 292 appeared as § 134 with no changes except that the word "provide" was substituted for "prescribe" in the first sentence.[1] The only other change material to the present controversy was that made by St. 1906, c. 463, Part II, § 178, where in the penalty clause in the second sentence the words "prescribe and furnish" were changed to "provide," and the statute has remained in this form ever since.

Had the law remained in its original form, so that the duty imposed by the first sentence was merely to "prescribe" a uniform cap, there would be force in the defendant's argument that it is not obligated to supply it to the plaintiff free of charge. But in the same session of the Legislature that passed the original statute the word "provide" was substituted for "prescribe." It is apparent that the Legislature in making this change intended to bring the first sentence which defined the duty into harmony with the second sentence which fixed the penalty. Thus

---

[1] Chapter 372 was reported out of committee with the following comment: "The intention throughout has been to present the present confused, contradictory and in many respects unintelligible railroad legislation of the Commonwealth in the exact form in which it now exists when brought together, straightened out and its inconsistencies and obvious imperfections eliminated. Very few alterations of any kind have been admitted into the present bill, and those only where the work of codification made it apparent that such changes were necessary to render the different portions of the act harmonious." House No. 480 (1874).

"provide" became synonymous with "prescribe and furnish," and this meaning was not altered by the change made in 1906. See *Ware* v. *Gay*, 11 Pick. 106, 109.

We are of opinion that the statute requires the defendant to furnish a uniform cap to the plaintiff without charge. It is plain that the statute was intended primarily for the benefit and protection of the travelling public. As counsel for the plaintiff has argued, this purpose could not be fully effectuated "if the railroads were left the right *not* to put the insignia of authority on their employees unless and until each employee paid the price — an indefinite and unregulated price." Further confirmation of this conclusion may be found in that part of the statute which imposes a penalty on the railroad in the event its employees neglect to wear the required insignia when on duty. It is hardly conceivable that the Legislature would exact this penalty if the supplying of the insignia was to be done by the employees who might or might not purchase it.

But, the defendant contends, such a construction would render the statute unconstitutional on the ground that it is class legislation. It is argued that, since the statute requires railroad corporations to furnish caps free of charge without imposing a similar duty on street railway, motor bus, air line and taxicab companies, it is arbitrary. We do not agree. That the defendant is guaranteed "equal protection of equal laws without discrimination or favor based upon unreasonable distinctions" under the Constitutions of both the Commonwealth and the United States is not to be doubted. *Brest* v. *Commissioner of Insurance*, 270 Mass. 7, 14. *Vigeant* v. *Postal Telegraph Cable Co.* 260 Mass. 335. *Commonwealth* v. *Boston & Maine Transportation Co.* 282 Mass. 345, 351. *Sullivan* v. *Police Commissioner of Boston*, 304 Mass. 113, 115. But it is equally well settled by these decisions that legislation in which the classification is reasonable does not violate this guaranty. In *Metropolitan Casualty Ins. Co.* v. *Brownell*, 294 U. S. 580, 584, it was said, "A statutory discrimination will not be set aside as the denial of equal protection of the laws if any state of facts reasonably may be conceived to justify it." See also

*Connor* v. *Metropolitan District Water Supply Commission*, 314 Mass. 33, 38. The fact that the statute does not apply to other types of common carriers such as street railway and motor bus companies cannot be said to constitute an unreasonable classification. *Atlantic Coast Line Railroad* v. *Georgia*, 234 U. S. 280, 289. *Atlantic Coast Line Railroad* v. *Ford*, 287 U. S. 502, 509. "Railways and railroads have been too long the objects of special laws to be open to discussion as proper subjects for constituting special classes." *Opinion of the Justices*, 251 Mass. 569, 601. We have not overlooked the recent decision of the Supreme Court of Michigan in *Woodward* v. *Pere Marquette Railway*, 312 Mich. 67, relied on by the defendant, holding unconstitutional, for the reason now urged, a statute quite similar to that here, but we are not disposed to follow it.

It is also contended that the statute under consideration affects the wages and working conditions of railroad employees by reason of the fact that the matter of supplying uniforms has been the subject of bargaining between railroads and their employees and that the Federal railway labor act (U. S. C. [1940 ed.] Title 45, § 151, et seq.) has occupied this field to the exclusion of State regulation. Assuming that the matter of supplying caps might give rise to a dispute about working conditions over which the national railroad adjustment board might have jurisdiction, [1] we are of opinion that this does not render the statute under consideration invalid. In *Terminal Railroad Association of St. Louis* v. *Brotherhood of Railroad Trainmen*, 318 U. S. 1, 6–7, where a similar argument was advanced, it was held that the enactment of the railway labor act was not a preëmption of the field of regulating working conditions themselves and did not preclude a State from regulating them in the absence of other legislation by Congress that conflicted with such regulation or could be said to occupy its field.

---

[1] It appears in the statement of agreed facts that the plaintiff is a member of the Brotherhood of Railroad Trainmen, "the duly accredited labor organization, representing the passenger trainmen on the Boston and Albany Railroad."

Next it is argued that the duty imposed by the statute to provide a cap or badge "which shall be worn by all its employees whose duties relate immediately to the transportation of passengers or their baggage" does not meet the standard of definiteness required of a penal statute. It is familiar law that statutes of this class must be so clearly expressed that those who may be subject to them should not have to guess at their meaning. *Commonwealth* v. *Pentz,* 247 Mass. 500, 506. *Kneeland* v. *Emerton,* 280 Mass. 371, 383–391. *International Harvester Co.* v. *Kentucky,* 234 U. S. 216, 223. *United States* v. *L. Cohen Grocery Co.* 255 U. S. 81. *Connally* v. *General Construction Co.* 269 U. S. 385. The present statute is not offensive to that principle. We think it points out with reasonable certainty the employees who are to be supplied with the required insignia.

Finally the statute is challenged on the ground that it is not a valid exercise of the police power. This contention is without merit. The question whether the supplying of insignia to the employees described in the statute was in the public interest was for the Legislature to decide. "When the subject lies within the police power of the State, debatable questions as to reasonableness are not for the courts but for the legislature, which is entitled to form its own judgment, and its action within its range of discretion cannot be set aside because compliance is burdensome." *Sproles* v. *Binford,* 286 U. S. 374, 388, 389. See *Howes Brothers Co.* v. *Unemployment Compensation Commission,* 296 Mass. 275, 284.

A decree is to be entered granting the relief prayed for in the bill.

*So ordered.*