SOMERS H. STURGIS & another *vs.* ATTORNEY GENERAL.

Suffolk. March 4, 1970. — June 29, 1970.

Present: WILKINS, C.J., SPALDING, CUTTER, KIRK, SPIEGEL, REARDON, & QUIRICO, JJ.

*Contraceptive. Constitutional Law,* Contraceptive.

G. L. c. 272, §§ 20, 21, and 21A, as appearing respectively in St. 1966, c. 265, §§ 2, 3, and 1, are constitutional in so far as they forbid a registered physician to administer contraceptives to or prescribe them for unmarried persons, and forbid a registered pharmacist to fill prescriptions for contraceptives for unmarried persons. CUTTER & SPIEGEL, JJ., dissenting.

BILL IN EQUITY filed in the Supreme Judicial Court for the county of Suffolk on July 29, 1969.

The suit was reserved and reported by *Reardon,* J.

*Roger P. Stokey (Stephen M. Weiner* with him) for the plaintiffs.

*Robert J. Condlin,* Deputy Assistant Attorney General *(Walter H. Mayo, III,* Assistant Attorney General, with him), for the Attorney General.

REARDON, J. The plaintiffs filed a bill for declaratory relief in the county court to determine the validity of G. L. c. 272, §§ 20, 21, and 21A. The parties submitted a statement of agreed facts. The single justice reserved and reported the case to the full court for such decree as may be entered under G. L. c. 231A. The facts in part are as follows.

The plaintiffs are registered physicians licensed to practise in Massachusetts, and are specialists in the field of gynecology, "trained and competent in the use of recognized drugs and articles used for the prevention of pregnancy." In the past each plaintiff in the course of his medical practice and in the exercise of his best medical judgment has administered to, and prescribed for, married

patients drugs and articles intended for the prevention of pregnancy or conception. It has been, is, and will be each plaintiff's desire in the course of his medical practice and in the exercise of his best medical judgment to administer to, and prescribe for, certain unmarried patients drugs or articles intended for the prevention of pregnancy or conception. Each is of the medical opinion that sound medical practice calls for such action. Each plaintiff has been advised that G. L. c. 272, § 20, as amended by St. 1966, c. 265, § 2; § 21, as amended by St. 1966, c. 265, § 3; and 21A, inserted by St. 1966, c. 265, § 1,[1] make it illegal for him to

---

[1] "Section 20. Except as provided in section twenty-one A, whoever knowingly advertises, prints, publishes, distributes or circulates, or knowingly causes to be advertised, printed, published, distributed or circulated, any pamphlet, printed paper, book, newspaper, notice, advertisement or reference containing words or language giving or conveying any notice, hint or reference to any person, or to the name of any person, real or fictitious, from whom, or to any place, house, shop or office where any poison, drug, mixture, preparation, medicine or noxious thing, or any instrument or means whatever, or any advice, direction, information or knowledge may be obtained for the purpose of causing or procuring the miscarriage of a woman pregnant with child or of preventing, or which is represented as intended to prevent, pregnancy shall be punished by imprisonment in the state prison for not more than three years or in jail for not more than two and one half years or by a fine of not more than one thousand dollars.

"Section 21. Except as provided in section twenty-one A, whoever sells, lends, gives away, exhibits, or offers to sell, lend or give away an instrument or other article intended to be used for self-abuse, or any drug, medicine, instrument or article whatever for the prevention of conception or for causing unlawful abortion, or advertises the same, or writes, prints, or causes to be written or printed a card, circular, book, pamphlet, advertisement or notice of any kind stating when, where, how, of whom or by what means such article can be purchased or obtained, or manufactures or makes any such article shall be punished by imprisonment in the state prison for not more than five years or in jail or the house of correction for not more than two and one half years or by a fine of not less than one hundred nor more than one thousand dollars.

"Section 21A. A registered physician may administer to or prescribe for any married person drugs or articles intended for the prevention of pregnancy or conception. A registered pharmacist actually engaged in the business of pharmacy may furnish such drugs or articles to any married person presenting a prescription from a registered physician.

"A public health agency, a registered nurse, or a maternity health clinic operated by or in an accredited hospital may furnish information to any married person as to where professional advice regarding such drugs or articles may be lawfully obtained.

"This section shall not be construed as affecting the provisions of sections twenty and twenty-one relative to prohibition of advertising of drugs or articles intended for the prevention of pregnancy or conception; nor shall this section be construed so as to permit the sale or dispensing of such drugs or articles by means of any vending machine or similar device."

administer to, or to prescribe for, any unmarried patient such drugs and articles, and make it illegal for any registered pharmacist to fill a prescription for such a patient. Each plaintiff has been advised that if he should administer to or prescribe such drugs or articles for an unmarried patient he could be arrested, prosecuted and convicted under G. L. c. 272, §§ 20, 21, and 21A, and sentenced for up to five years in the State prison and have his licence to practise medicine indefinitely suspended by the Massachusetts Board of Registration in Medicine.

The defendant Attorney General is responsible for enforcing the laws of the Commonwealth, and under authority granted to him proposes to enforce G. L. c. 272, §§ 20, 21, and 21A.

The plaintiffs argue that they are engaged in a profession under the protections of the Fourteenth Amendment to the Constitution of the United States and arts. 1, 10 and 12 of the Massachusetts Bill of Rights. They allege that any exercise of the police powers which infringes on their constitutional rights "must have a 'real and substantial relation' to the general welfare." They state that the statutory provisions under attack are unrelated to the statutory purpose and interfere both with their right to carry on a profession and their duty to care for their patients in derogation of the Fourteenth Amendment to the Constitution of the United States and the stated articles of the Massachusetts Bill of Rights. They further allege the statutes to be invalid in that they discriminate against the indigent.

The Attorney General argues the Commonwealth's ability to prohibit distribution of birth control devices to the unmarried on the ground that the Commonwealth is entitled to protect the health and welfare of its citizens, and also argues that new research in the field cited at the hearings before a United States Senate subcommittee in January, 1970, indicated the potential danger of contraceptives in causing long range mutagenic and carcinogenic side effects. Reference was made to conflicting medical testimony between experts on the subject. It is on the basis of this

Senate testimony that the Attorney General further argues that the prohibition against distribution of birth control devices to single persons is reasonably related to the public health and welfare. The Attorney General refers to *Sperry & Hutchinson Co.* v. *Director of the Div. on the Necessaries of Life*, 307 Mass. 408, 418, where we said, "Unless the act of the Legislature cannot be supported upon any rational basis of fact that reasonably can be conceived to sustain it, the court has no power to strike it down as violative of the Constitution." We further test the legislation on the basis that "[a]ll rational presumptions are made in favor of the validity of every legislative enactment. Enforcement is to be refused only when it is in manifest excess of legislative power." *Commonwealth* v. *Finnegan*, 326 Mass. 378, 379. Furthermore, as we stated in *Commonwealth* v. *Leis*, 355 Mass. 189, 192, "We know of nothing that *compels* the Legislature to thoroughly investigate the available scientific and medical evidence when enacting a law. . . . The Legislature is presumed to have acted rationally and reasonably." The current case raises questions resembling those discussed in *Commonwealth* v. *Leis*, *supra*. The questionable safety of birth control devices is earnestly argued by the Attorney General. "That there may be an earnest conflict of serious opinion does not suffice to bring matters of legislative judgment within the range of judicial cognizance." *Commonwealth* v. *Leis*, 355 Mass. 189, 201, Kirk, J., concurring. In short, the Legislature is free to conclude that some harm may conceivably attend the employment of contraceptive devices. If such be so, the prohibition against their distribution bears a real and substantial relation to the legislative purpose. We are aware that it may well be that certain contraceptive medication and devices constitute no hazard to health, in which event it could be argued that the statute swept too broadly in its prohibition.

There is, however, a second and more compelling ground for upholding the statute. The plaintiffs argue that the statutory provisions, following in the wake of *Griswold* v. *Connecticut*, 381 U. S. 479, that the plaintiffs can treat

married but not unmarried patients are anomalous on their face. There can be no doubt that the enforcement of the statute does create certain factual situations which at best can be described as unhappy. However, the *Griswold* case is based on the right of privacy "surrounding the marriage relationship." *Griswold* v. *Connecticut, supra,* at 486. The Supreme Court of the United States found the Connecticut statute too broad in scope and thus restricted the Legislature from interdicting distribution of birth control devices to married persons. However, the *Griswold* case, as the Attorney General argues, affirmed "beyond doubt" the right of the State of Connecticut to enact statutes regulating the private sexual lives of single persons, stating that the discouraging of extra-marital relations is "admittedly a legitimate subject of state concern" and that the statutes within the basic purpose "of protecting marital fidelity are available to Connecticut without the need to 'invade the area of protected freedoms.'" *Griswold* v. *Connecticut, supra,* at 498, Goldberg, J., concurring. We referred to this language in *Commonwealth* v. *Baird,* 355 Mass. 746, 749, when we stated that the *Griswold* case and the ensuing statutory amendments in Massachusetts brought about by the *Griswold* case "did not . . . repeal the prohibition against laymen furnishing information or providing contraceptives, *and they did not enlarge the group who might be so informed or thus provided. Unmarried individuals are still excluded*" (emphasis supplied).

To the argument which is made to us that prohibition against the distribution of birth control devices violates the rights of a physician to toil in his profession, we can only say that such well recognized right as does exist is constantly subject to those laws and regulations which have the design of protecting the public health by any rational means. *Lawrence* v. *Board of Registration in Medicine,* 239 Mass. 424, 428. The physician's obligation to his conscience and to his profession is entirely consonant with his obligation also to abide appropriate regulation imposed by the body politic in the public interest.

To the argument that the statutes complained of are discriminatory in that they deny equal treatment to the poor, we find the record devoid of facts to overcome the presumption that the statute in fact deals fairly with the poorer elements of the population. Simple unsupported assertion is not enough in our opinion to invalidate the statute on this ground.

In short, the plaintiffs have brought a suit dealing with highly debated matters which are not to be decided on personal judicial predeliction. Our function is to determine whether in accord with art. 30 of the Declaration of Rights of our own Constitution dealing with the separation of powers, and in accord with other constitutional requirements to which allusion has been made, the Legislature has properly acted in passing the statutes on which there is complaint. For the reasons which we have assigned above we cannot say that G. L. c. 272, §§ 20, 21, and 21A, are unconstitutional, and it remains only to point out that the proper forum for the plaintiffs' case is the General Court, not here.

A decree is to be entered declaring that G. L. c. 272, §§ 20, 21, and 21A, are constitutional in so far as they forbid a registered physician to administer contraceptives to or prescribe them for unmarried persons, and forbid a registered pharmacist to fill prescriptions for contraceptives for unmarried persons.

*So ordered.*

CUTTER, J. and SPIEGEL, J. (dissenting). We do not agree with the opinion. In general our views on the broad aspects of the question of birth control assistance for unmarried persons have been stated in our dissenting opinions in *Commonwealth* v. *Baird*, 355 Mass. 746, 756, 758. In accordance with those views we would hold unconstitutional these statutes which make it a felony for even highly qualified doctors, in the exercise of professional judgment, to prescribe contraceptive drugs or devices for unmarried patients.